DISTRICT COURT OF THE UNITED STATES OF AMERICA   Civil Action No.:  19-CV-1310
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――X
Jeremy Weaver,
              -Plaintiff

                     **COMPLAINT**

  -against-

Cognizant, Abhijit Thosar Sajithkumar Thayappalliveliyi,   **JURY TRIAL**
Supreeta Krishnamurthy, Thiagarajan Venugopalan,      **DEMANDED**
Vidya Shankaran, Sanjay Bhat, Bibhakar Pandey,
Sowri Santhanakrishnan                                   **ECF CASE**
                    -Defendants.
―――――――――――――――――――――――――――――――X

     Plaintiff JEREMY WEAVER (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, Kareem E. Abdo, Esq., complains against the above captioned Defendants, COGNIZANT, ABHIJIT THOSAR, SAJITHKUMAR THAYAPPALLIVELIYI, SUPREETA KRISHNAMURTHY, THIAGARAJAN VENUGOPALAN, VIDYA SHANKARAN, SANJAY BHAT, BIBHAKAR PANDEY, SOWRI SANTHANAKRISHNAN (hereinafter referred to individually as "Defendant" or collectively as "Defendants") and alleges as follows:

## PRELIMINARY STATEMENT

     1.  This is a civil rights action in which the Plaintiff, JEREMY WEAVER, seeks relief for the Defendant COGNIZANT's violations of his rights secured by the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e to 2000e-17.  Plaintiff sought and was issued a "right to sue" letter from the Equal Employment Opportunity Commission.  That letter is attached as EXHIBIT A. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees and such other and further relief as this honorable Court deems just and proper.

2. In addition, pursuant to 28 U.S. Code § 1367, Plaintiff asks this honorable court to exercise its supplemental jurisdiction over Plaintiff JEREMY WEAVER's New York State and New York City claims as "they form part of the same case or controversy."

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 2000e to 2000e-17.  Jurisdiction is conferred upon this honorable Court by 28 U.S.C. § 1331, this being an action seeking redress for the violation of the Plaintiff's rights conferred by federal statute thus raising a federal question.

4. Pursuant to 28 U.S. Code § 1367, this honorable court may also exercise its supplemental jurisdiction over Plaintiff's state and city claims.

5. Venue in this District is proper under 28 U.S.C. § 1391 (b) and (c) in that Defendant, COGNIZANT, is administratively located in part within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## THE PARTIES

7. Plaintiff is a resident of the State of Texas.

8. Defendant COGNIZANT is a New Jersey company, incorporated in the state of Delaware.  Defendant COGNIZANT does business in the confines of this district as it maintains an office in New York County, New York State.

9. Defendant ABHIJIT THOSAR was, at all relevant times discussed in this COMPLAINT, a Senior Director with Defendant company COGNIZANT

10. SAJITHKUMAR THAYAPPALLIVELIYIL was, at all relevant times discussed in this COMPLAINT, an Associate Director with Defendant company COGNIZANT

11. SUPREETA KRISHNAMURTHY was, at all relevant times discussed in this COMPLAINT, a Senior Manager, of Human Resources with Defendant company COGNIZANT

12. THIAGARAJAN VENUGOPALAN was, at all relevant times discussed in this COMPLAINT, a Project Manager with Defendant company COGNIZANT.

13. VIDYA SHANKARAN was, at all relevant times discussed in this COMPLAINT, a Director of Business Operations with Defendant company COGNIZANT.

14. SANJAY BHAT was, at all relevant times discussed in this COMPLAINT, an Associate Director with Defendant company COGNIZANT.

15. BIBHAKAR PANDEY was, at all relevant times discussed in this COMPLAINT, a Vice President & Global Practice Leader with Defendant company COGNIZANT.

16. SOWRI SANTHANAKRISHNAN was, at all relevant times discussed in this COMPLAINT, a Vice President of Mobility with Defendant company COGNIZANT.

**FACTS UNDERLYING THE ACTION**

17. Plaintiff JEREMY WEAVER is an individual of American national origin.

18. Plaintiff was an employee of Defendant COGNIZANT.  Plaintiff was given the position of Senior Manager Creative Director.  Plaintiff was employed at the mid-town Manhattan location of Defendant COGNIZANT, as well as servicing Defendant COGNIZANT's clients on location at Defendant COGNIZANT's client's offices.  He spent 100% of his time

servicing accounts of Defendant COGNIZANT's Digital Business, which maintains its primary office at the New York County office of Defendant COGNIZANT.

19. Defendant COGNIZANT is a professional service firm and a purveyor of information technologies including artificial intelligence and other means of using information on behalf of their clients who are major corporations.

20. Plaintiff JEREMY WEAVER began working for Defendant COGNIZANT at the beginning of May 2015.  In that time he was assigned a few clients, including Sotheby's International Realty and its parent company Realogy.  Both of which remain Plaintiff JEREMY WEAVER's personal clients even since his departure from Defendant COGNIZANT.  Plaintiff was given a monicker, amongst others, internally at Defendant COGNIZANT of Corporation Strategic Design Leadership, meaning Plaintiff JEREMY WEAVER was already in design leadership for $3 Million Dollar accounts.

21. Defendant COGNIZANT utilized Plaintiff JEREMY WEAVER, as one of Defendant COGNIZANT's few Senior Manager level Creative Directors in North America and the New York City region, Plaintiff JEREMY WEAVER regularly met and worked with Defendant COGNIZANT's Digital Business clients at Defendant COGNIZANT's New York City office and at Defendant COGNIZANT's clients' own offices.

22. Beginning in August of 2015, Plaintiff JEREMY WEAVER began to consider that he may be the subject of discrimination.  Beginning in August of 2015, when Plaintiff JEREMY WEAVER's first direct supervisor, Defendant ABHIJIT THOSAR, among countless others including Defendants SAJITHKUMAR THAYAPPALLIVELIYIL, SUPREETA KRISHNAMURTHY, THIAGARAJAN VENUGOPALAN, VIDYA SHANKARAN, SANJAY

BHAT, BIBHAKAR PANDEY, SOWRI SANTHANAKRISHNAN described in this COMPLAINT, *supra* and who made up part of the the Cognizant Digital Business leadership team, would consistently give the best opportunities to employees of Indian origin; these assignments were given to employees of Indian origin even though their design, relationship building capabilities, quality of work, and overall performance were far inferior to work done by Plaintiff JEREMY WEAVER and other employees of United States national origin.

23. Plaintiff JEREMY WEAVER also became aware of his future direct supervisor, Kathleen Flynn, and her supervisor, David Chang, and Plaintiff JEREMY WEAVER's impression that they suffered from discrimination as employees of American national origin.

24. Plaintiff JEREMY WEAVER kept his head down and continued to do his best work despite the impressions he made as described in paragraphs 22 and 23 of this COMPLAINT. By August of 2015 Plaintiff's skill set and work ethic were getting notice around the company of Defendant COGNIZANT, both within the New York City office and outside of this office of Defendant COGNIZANT. Plaintiff JEREMY WEAVER was given the opportunity to work on the business development team of Defendant COGNIZANT, that pitched the Wyndham Worldwide Companies of hotel purveyors. Plaintiff helped secure a $1 Million contract for the Defendant COGNIZANT. He was also assigned to the Papa John's Pizza purveyors account where he personally wrote and delivered the design presentation to the Papa John's team. Plaintiff JEREMY WEAVER's efforts secured engagement, from zero to ten, of Defendant COGNIZANT's billable digital business design and marketing associates who were engaged with the marketing department of Papa John's Pizza.

25. Other Practice Leaders of Defendant COGNIZANT including DEFENDANT JAYACHANDRAN INDRAKUMAR, David Chang and Kathleen Flynn, recognized that Plaintiff JEREMY WEAVER was capable of creating far more value for the company than his current supervisor would allow, so DEFENDANT JAYACHANDRAN INDRAKUMAR worked with select senior leaders to overrule Plaintiff's then current supervisor, Defendant ABHIJIT THOSAR, and start the process of changing Plaintiff's supervisor while facilitating a change in the role of Plaintiff JEREMY WEAVER to a role that had Plaintiff more deeply involved in regional leadership and business development activities.

26. Plaintiff JEREMY WEAVER was assigned to a new supervisor, Kathleen Flynn an American origin woman.  As an American, especially an American with an American supervisor Plaintiff JEREMY WEAVER was at a disadvantage compared to Indian associates who had Indian supervisors within Defendant COGNIZANT.  This circumstance was because Indian employees strongly prefer to give opportunities to their fellow countrymen due to bias and empathy.

27. The allegations in Paragraph 26 and generally in this COMPLAINT clearly indicate that Defendant COGNIZANT harbors a culture and policy of bias towards Indian origin employees and bias against those employees of American origin.

28. Plaintiff continued to receive premium assignments within Defendant COGNIZANT despite the allegation made in Paragraph 26.  Plaintiff JEREMY WEAVER was selected to lead internal branding, sales and marketing design for Defendant COGNIZANT's Digital Agency practice.  This post was conferred upon Plaintiff by the Global Vice President of Design of Defendant COGNIZANT, David Chang, and the senior leadership team of Defendant

COGNIZANT's Digital Engagement Practice.  Plaintiff JEREMY WEAVER's work was widely acclaimed by internal executive leadership and by the clients mentioned in this COMPLAINT of Defendant COGNIZANT.  This is important, because the purpose of the assignment was to win new business on behalf of Defendant COGNIZANT.

29.  In April of 2016, Plaintiff JEREMY WEAVER was given a review and achieved very high marks and was given a bonus.

30.  In or around April of 2016 Plaintiff JEREMY WEAVER was assigned to the Pepsi Company account, purveyors of beverages and edible snacks, by his new supervisor, Kathleen Flynn.  Plaintiff was assigned to help repair and improve Cognizant's client fractured relationship with the PepsiCo Business Innovation department after the existing team of Defendant COGNIZANT failed to deliver mobile software application designs and a level of service that met PepsiCo's needs and expectations.  Plaintiff JEREMY WEAVER was tasked with "repairing and improving" by Plaintiff's superiors and indeed by contacts on the PepsiCo team as well.  This task of "repairing and improving," the relationship was to be done by designing a corporate travel mobile software application after over half of the project's original design timeline had already elapsed.  Plaintiff was the face of Defendant COGNIZANT with the task of turning a bad situation good with a major business client of Defendant COGNIZANT.

31.  The work Plaintiff JEREMY WEAVER did ended up being a win for the Defendant COGNIZANT and the work was further heralded within the company of Defendant COGNIZANT as a major win, and an ideal outcome for the company and Plaintiff JEREMY WEAVER.

32. In June of 2016, Plaintiff JEREMY WEAVER, was assigned by his supervisor, Kathleen Flynn and Global Vice President of Design, David Chang to help lead the design portion of a strategic business development effort for Defendant COGNIZANT's client, Discover Financial Services. Plaintiff helped secure new business for his employer, Defendant COGNIZANT. Plaintiff JEREMY WEAVER also helped lead the business development presentation for this effort and others. This was probably an over 10 Million dollar account of Defendant COGNIZANT thus this was a key client for both Plaintiff JEREMY WEAVER and Defendant COGNIZANT. Again Plaintiff excelled to the benefit of Defendant COGNIZANT.

33. By August of 2016 Plaintiff JEREMY WEAVER was planning and directing American and Indian design team members for several other million dollar accounts of Defendant COGNIZANT.

34. Plaintiff JEREMY WEAVER continued to excel on behalf of Defendant COGNIZANT. He led several teams on several important projects as prior to the summer of 2016. As has been the theme of this COMPLAINT thus far, Plaintiff excelled in his work and did his best to do so, despite the allegations made in Paragraph 26.

35. Plaintiff JEREMY WEAVER was given another performance review for 2017; Plaintiff's review was just as positive as his 2016 performance review. Plaintiff JEREMY WEAVER received the same high marks and overall rating as well as his annual bonus.

36. Plaintiff JEREMY WEAVER greatly enjoyed his role at Defendant COGNIZANT as it provided opportunities to solve strategic problems for major corporations that were leaders in their respective industries. However, Plaintiff JEREMY WEAVER did not enjoy the lack of leadership opportunities available to employees of American origin due to deeply ingrained

biases that favored Indian employees. Plaintiff JEREMY WEAVER was unable to secure or even be seriously considered for higher-level leadership roles within Defendant COGNIZANT due to preferential treatment and unequal opportunities for advancement that are commonly given to Indian employees within Defendant COGNIZANT without due consideration of American employees who may be equally or better qualified, as was the case for Plaintiff JEREMY WEAVER, who had impeccable qualifications to advance within Defendant COGNIZANT but was left behind due to his national origin of being an American. This is well demonstrated by an internal email that Plaintiff JEREMY WEAVER received on April 13 2017, attached *hereto* as EXHIBIT B, opportunities for advancement were only presented to Plaintiff JEREMY WEAVER when the situation was uniquely suited for an American and less suitable for an Indian employee according to Defendant COGNIZANT and Defendants SAJITHKUMAR THAYAPPALLIVELIYIL, SUPREETA KRISHNAMURTHY, THIAGARAJAN VENUGOPALAN, VIDYA SHANKARAN and SANJAY BHAT as will be discussed *heriein*.

     37. On or about April 13, 2017 Plaintiff JEREMY WEAVER was approached via email about a potential opportunity only because he was an American. Plaintiff JEREMY WEAVER received an email, attached *hereto* as EXHIBIT B, from an internal Talent Supply team member, Defendant SAJITHKUMAR THAYAPPALLIVELIYIL as well as copped *thereto*, Defendants SUPREETA KRISHNAMURTHY, THIAGARAJAN VENUGOPALAN, VIDYA SHANKARAN and SANJAY BHAT. Defendant SAJITHKUMAR THAYAPPALLIVELIYIL, an internal recruiter, with Defendant COGNIZANT, sent this job posting to Plaintiff JEREMY WEAVER with a discriminatory job description which indicated that a "diversity candidate...an American" was preferred for the role due to "cultural fitment reasons."

38. This email shines a light on the widely acknowledged and discussed lack of diversity and bias in favor of Indian men within Defendant COGNIZANT. American "Diversity" candidates like women and non-Indians are given opportunities only when it is uniquely advantageous or a dire need for the company.

39. From in or about January of 2017 to in or about June of 2017, Plaintiff was selected to lead top priority business development pitches, design innovation projects, and strategic client relationship development efforts.

40. Plaintiff JEREMY WEAVER was selected by the Global Vice President of Design David Chang and senior leadership team members from multiple practice areas across the company to focus on leading new business pitches and help grow strategic client relationships. Again, Plaintiff JEREMY WEAVER secured new business wins, design innovation projects, and strategic relationship development on behalf of his employer Defendant COGNIZANT. There is a long list of theses positive developments secured by Plaintiff JEREMY WEAVER, which included, but were not limited to, the following Fortune 100 and Fortune 500 clients: American International Group (AIG), BJ's Wholesale Club, PepsiCo, Pizza Hut (of YUM! Brands), SunTrust, Discover Financial Services, The Prudential Companies, and the Associated Press.

41. In the summer of 2017, Plaintiff JEREMY WEAVER sought to cash in on his many successes with the Defendant company, COGNIZANT. Plaintiff repeatedly inquired about or attempted to apply for new opportunities. Instead of multiple offers, as would seemingly be the case, he saw men of Indian origin secure *each and every* opportunity available. Meanwhile Plaintiff JEREMY WEAVER and other American origin employees of Defendant COGNIZANT were simply being cast aside. Associates above Plaintiff's level of American origin were being

urged to accept early buyout offers, or risk being furloughed without further compensation. Associates at the same level as Plaintiff or below did not enjoy the same accommodation from Defendant COGNIZANT. These associates were simply furloughed without compensation. At all levels of the Defendant COGNIZANT Digital Business organization, a disproportionate number of American employees were consistently pushed out while Indian employees were protected from furloughs through reassignment to new roles and/or accounts.

42. Plaintiff JEREMY WEAVER suffered from feelings of frustration and jealousy, as many of the male Indian employees who were given these opportunities, which typically come with generous relocation packages, increased salary and better titles, while Plaintiff remained stagnant within Defendant COGNIZANT. These Indian origin employees of Defendant COGNIZANT were commonly known as serial under-performers, friends or relatives of hiring decision makers, or simply lacking the required skills and experience listed in the job description. Plaintiff JEREMY WEAVER insists, as evidenced by the preceding allegations of this COMPLAINT, that he was more qualified than these preferred Indian origin associates. Every time that Plaintiff JEREMY WEAVER applied for or expressed interest in a Client Service Executive, Engagement Manager, or Account Manager, or similar role, he was ultimately ignored or passed over. This is despite Plaintiff JEREMY WEAVER being overqualified and *highly recommended*, Plaintiff always eventually learned that the roles were given to Indian employees of Defendant COGNIZANT based solely on their race and national origin.

43. Plaintiff JEREMY WEAVER sought Client Service Executive roles with several of Defendant COGNIZANT's clients, particularly Ford Motors, SunTrust, Exxon, and the PepsiCo accounts. Despite Plaintiff JEREMY WEAVER's success on so many accounts including that of

PepsiCo, nearly all of them were given to less suitable, mostly male, employees from India while female and non-Indian candidates were routinely ignored and passed over, including Plaintiff JEREMY WEAVER.

44. As discussed in this COMPLAINT, *supra*, evidenced by the EXHIBIT B email sent to Plaintiff JEREMY WEAVER, in the summer of 2017, Plaintiff JEREMY WEAVER received via email and applied for a job opportunity as the Digital Service Delivery Manager role on Cognizant's account with Gilead, a biotechnology company based in Foster City, California. Plaintiff and several people applied for the role, including several "Diversity Candidates" of American origin. *None of the Americans were given serious consideration,* including Plaintiff JEREMY WEAVER. It is Plaintiff's belief that the position was given to an employee of Defendant COGNIZANT of Indian origin.

45. In the summer of 2017, Plaintiff JEREMY WEAVER was eager to climb the corporate ladder within the structure of Defendant COGNIZANT. Plaintiff JEREMY WEAVER was interested in the US Digital Agency Lead role. No job description was circulated for this opportunity, however Plaintiff JEREMY WEAVER expressed interest to a decision maker for this particular role, Defendant JAYACHANDRAN INDRAKUMAR and Plaintiff did not know that any leadership change had occurred until he learned that an Indian employee who recently joined the firm had been awarded the position despite her lack of knowledge about the firm and its clients and practices.

46. Despite very much enjoying his role with Defendant COGNIZANT, Plaintiff JEREMY WEAVER was naturally frustrated. He performed good work on behalf of Defendant COGNIZANT, and appreciated the opportunity to solve strategic problems for major

corporations, corporations who were leaders in their respective industries.  *However*, Plaintiff JEREMY WEAVER was precluded from leadership opportunities as an employee of Defendant COGNIZANT who was of American origin.  Plaintiff JEREMY WEAVER was unable to secure or even be given serious consideration despite his excellent performance on behalf of Defendant COGNIZANT.  Plaintiff's attempts to secure higher-level leadership roles never bore fruit, though Plaintiff's efforts on behalf of Defendant COGNIZANT did.  As discussed previously in this COMPLAINT, Plaintiff JEREMY WEAVER was a fantastic employee who provided fantastic results.

47. In response to the discrimination that Plaintiff JEREMY WEAVER suffered from, he decided in frustration to resign from his role with Defendant COGNIZANT.  Plaintiff gave over 4 weeks notice to his employer who had violated his human rights as protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, and the NewYork City Human Rights Law.  Plaintiff JEREMY WEAVER maintains that he would not have made the decision to resign but for the discriminatory policies and actions of Defendants.  Working on behalf of Defendant COGNIZANT is both a lucrative and secure position that is very sought after in Plaintiff JEREMY WEAVER's industry, but as he was not getting his fair share of advancement and work, Plaintiff felt that his only decision was to move on.

48. Plaintiff has very much moved on and has his own clients as discussed in this COMPLAINT *supra*, and further has secured a position with one of Defendant COGNIZANT's direct competitors, the MindTree, as a program director.  This role is effectively similar to the US Agency Lead Role with the Defendant COGNIZANT, which Plaintiff applied for.  The position

is a national role, for a similar information technology firm, providing the same types of services, including business development, team building, and establishing business and offices.

49. While the roles at MindTree and that which Plaintiff JEREMY WEAVER sought with Defendant COGNIZANT are similar, as discussed *supra*, Plaintiff would never have resigned from Defendant COGNIZANT, had it not been for the discrimination that Plaintiff suffered for his American national origin.

## CAUSES OF ACTION

### FIRST CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON NATIONAL ORIGIN AS DESCRIBED IN 42 U.S. Code § 2000e–2**

**AGAINST Defendant COGNIZANT**

50. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

51. Plaintiff, as stated in paragraph 45 and generally in this COMPLAINT *supra,* was discriminated against based upon his national origin by Defendant COGNIZANT.

52. As alleged in paragraph 45 and generally in this COMPLAINT *supra* the treatment of Plaintiff JEREMY WEAVER was not for any legitimate reason under color of law but was indeed executed to discriminate against him based upon his national origin.

53. Thus the prohibition against unlawful employment practices made unlawful by Title VII of the Civil Rights Act of 1964, contained in 42 U.S.C. § 2000e-2, was violated by Defendant COGNIZANT.

## SECOND CLAIM: ILLEGAL DISCRIMINATION

### ILLEGAL EMPLOYMENT PRACTICES BASED UPON NATIONAL ORIGIN AS DESCRIBED IN New York State Human Rights Law N.Y. Executive Law, Article 15 § 296(a)

### AGAINST all Defendants

54. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

55. Plaintiff, as stated in paragraphs 22 and 47 and generally in this COMPLAINT *supra,* was discriminated against based upon his national origin by Defendants.

56. As alleged in paragraph 47 and generally in this COMPLAINT *supra* the treatment of Plaintiff JEREMY WEAVER was not for any legitimate reason under color of law but was indeed executed to discriminate against him based upon his national origin.

57. The Defendants have colluded to willfully violate the anti-discrimination portion of the New York State Human Rights Law N.Y. Executive Law, Article 15 § 296(a)

## THIRD CLAIM: ILLEGAL DISCRIMINATION

### ILLEGAL EMPLOYMENT PRACTICES BASED UPON NATIONAL ORIGIN AS DESCRIBED IN New York City Human Rights Law 8 Admin. Code of the City of New York § 8-107, 1(a)

### AGAINST all Defendants

58. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

59.  Plaintiff, as stated in paragraphs 22 and 47 and generally in this COMPLAINT *supra,* was discriminated against based upon his national origin by Defendants.

60.  As alleged in paragraph 47 and generally in this COMPLAINT *supra* the treatment of Plaintiff JEREMY WEAVER was not for any legitimate reason under color of law but was indeed executed to discriminate against him based upon his national origin.

61.  The Defendants have colluded to willfully violate the anti-discrimination portion of the New York City Human Rights Law.  8 Admin. Code of the City of New York § 8-107, 1(a).

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages in the amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. The convening and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 11, 2019

_____
Kareem E. Abdo, Esq.
260 Madison Ave.
Suite 204
New York, NY 10016
Tel: (646) 286-6472
Fax: (646) 663-3921
Email: kareemabdolaw@gmail.com

*Attorney for Plaintiff*